UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| URSULA MILLETT, and<br>JEANINE M. SANLORENZO,<br>on behalf of themselves and<br>all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>H&R BLOCK, INC.,<br>HRB TAX GROUP, INC., and<br>HRB TECHNOLOGY, LLC,<br><br>     Defendants. | CASE NO. 3:13-cv-00346-DRH-PMF<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiffs Ursula Millett and Jeanine M. Sanlorenzo (collectively, "Plaintiffs"), by their attorneys, bring this action on behalf of themselves and all other similarly-situated persons in the United States against Defendants H&R Block Inc., HRB Tax Group, Inc., and HRB Technology, LLC (collectively, "Defendants" or "H&R Block"), and allege as follows:

     **I. NATURE OF THE CASE**

  1. Plaintiffs bring this class action on behalf of all individuals who had U.S. federal income tax returns including Forms 8863 for the year 2012 prepared for them by Defendants, which were filed before February 22, 2013, and where H&R Block determined that the tax payers were entitled to refunds.

  2. A Form 8863 is a document that can be completed by an taxpayer to claim "education credits" based upon eligible student expenses paid during the taxable year. The form

allows an taxpayer to claim one of two education credits: the American Opportunity Credit (which provides up to a $2,500 credit per eligible student, part of which may be refundable), or the Lifetime Learning Credit (which provides up to a $2,000 credit per return).

3. Previously, lines determining eligibility for tax credits in the Form 8863 could be left blank and still indicate to the Internal Revenue Service ("IRS") that the taxpayer qualified for the student tax credit. Starting with the 2012 tax year, the IRS began to require that certain information be entered in the eligibility lines to indicate qualification. However, the Form 8863 in H&R Block's tax software continued to permit the lines to be left blank, which has resulted in the delay of thousands of refunds.

4. Defendants have admitted that these tax returns were erroneously prepared, resulting in the tax refunds for approximately 600,000 returns being delayed for at least six weeks beyond the time when they would have been paid.

## II.   JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action involving common questions of law or fact in which the aggregate amount in controversy exceeds $5,000,000, there are more than one hundred members of the Class, and at least one member of the putative Class is a citizen of a state different from that of one of the Defendants. This Court has personal jurisdiction over the parties because Defendants maintain offices in this state and conduct business here.

6. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Southern District of Illinois because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this District.

## III.   PARTIES

7. Plaintiff Ursula Millett is a resident and citizen of the State of Illinois.

8.      Plaintiff Jeanine M. Sanlorenzo is a citizen and resident of the Commonwealth of Pennsylvania.

9.      Defendant H&R Block, Inc. is a Missouri corporation with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105.  H&R Block, Inc. does substantial business in Illinois.

10.     Defendant H&R Block, Inc. has a "Tax Services" segment, which it describes in its annual report on Form 10-K for the year ending April 30, 2012, as follows:

> Our Tax Services segment is primarily engaged in providing tax return preparation and related services and products in the U.S. and its territories, Canada, and Australia. Major revenue sources include fees earned for tax preparation and related services performed at company-owned retail tax offices, royalties from franchisees, sales of tax preparation software, online tax preparation fees, fees from refund anticipation checks (RACs), fees from our H&R Block Prepaid Emerald MasterCard®, and interest and fees from Emerald Advance lines of credit (EAs). HRB Bank also offers traditional banking services including checking and savings accounts, individual retirement accounts and certificates of deposit.
>
> Assisted income tax return preparation and related services are provided by tax professionals via a system of retail offices operated directly by us or by franchisees.

11.     The 2012 Form 10-K describes the volume of H&R Block's tax business as follows:

> We, together with our franchisees, prepared 25.6 million tax returns worldwide during fiscal year 2012, compared to 24.5 million in 2011 and 23.2 million in 2010.  We prepared 22.3 million tax returns in the U.S. during fiscal year 2012, up from 21.4 million in 2011 and 20.1 million in 2010.  Our U.S. tax returns prepared during the 2012 tax season, including those prepared by our franchisees and those prepared and filed at no charge, constituted approximately 16% of an Internal Revenue Service (IRS) estimate of total individual income tax returns filed during the fiscal year 2012 tax season.

12.     Defendant HRB Tax Group, Inc. is a Missouri corporation with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105.  It does substantial business in Illinois.  It does business under the assumed name of "H&R Block," and furnishes

3

the services performed by the "Tax Services" segment of H&R Block, Inc.

13. Defendant HRB Technology, LLC is a limited liability company organized under Missouri law with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105. It does substantial business in Illinois.

14. Defendants, in their Client Service Agreement, represent that:

> If we prepare your tax return(s), HRB Technology LLC ("HRBT"), an affiliate of HRB Tax Group Inc., will provide you technology services pursuant to this CSA in order to facilitate e-filing and other tax preparation-related technology services (collectively "Facilitation Services") on your behalf. HRBT owns all right, title and interest in the Facilitation Services, including but not limited to, all methods, processes, content formats, designs and URLs together with any and all inventions, patents, other intellectual property rights and derivative works and improvements pertaining thereto. . . Any Facilitation Services performed by HRBT shall be deemed to take place in the State of Missouri and shall be governed by the laws of the State of Missouri without regard to its or any other states' conflict of laws principles.

## IV. COMMON FACTUAL ALLEGATIONS

15. Defendants are in the business of tax preparation services.

16. Specifically, Defendants prepare tax returns using proprietary software created and/or owned by HRB Technology LLC or HRB Tax Group, Inc.

17. Defendants require individuals who utilize their services to agree to binding arbitration for claims that could arise concerning their tax preparation services (the "Arbitration Agreement"); however, Defendants allow individuals to "opt out" of the Arbitration Agreement.

18. H&R Block engages in widespread broadcast, print and internet advertising. This advertising contains a consistent theme: "100% accuracy and maximum refund guarantee. . . ."[1] H&R Block's website states: "We guarantee accurate calculations. . . ."[2] H&R Block also

---

[1] *See* http://www.hrblock.com/why-hr-block/index.html (last visited April 3, 2013).
[2] *See* http://www.hrblock.com/why-hr-block/our-guarantees.html (last visited April 3, 2013).

4

represents that: "The H&R Block Guarantee is included with every tax return we prepare."[3] Finally, H&R Block At Home™ Software Products come with a "**100% Satisfaction Money-back Guarantee.**"[4]

19. These guarantees were made by H&R Block with the intent that consumers rely upon them.

20. Plaintiffs and Class members would be reasonable in relying upon such guarantees made by Defendants.

21. All tax returns prepared by H&R Block or its franchisees are prepared and transmitted to the IRS using standard methods and software. Franchisees were not at liberty to depart from the standard methods or software with respect to the returns they prepare.

22. Plaintiffs and Class members were customers of and had tax returns prepared by H&R Block, which included Forms 8863.

23. A form 8863 is used to claim tax credits (such as the American Opportunity Credit and the Lifetime Learning Credit) for qualified expenses paid to post-secondary education institutions. Credits can be claimed if a taxpayer, spouse, or a dependent was a student in 2012 or the first three months of 2013.

24. Returns involving Form 8863 are prepared for personal, family, or household purposes.

25. Information on tax returns, including Form 8863, is used for the Free Application for Federal Student Aid ("FAFSA"), which is the basic qualifying form used for all federal student aid programs, and many state, regional and private student aid programs.

26. When preparing Plaintiffs' and Class members' tax returns, HRB Technology,

---

[3] *See id.*
[4] *See id.* (emphasis in original).

5

LLC and HRB Tax Group, Inc. either improperly completed or improperly transmitted (or both) IRS Forms 8863, used to claim educational tax credits, leaving mandatory fields blank.

27. On information and belief, H&R Block failed to answer form 8863 questions 23 through 26 with either a "yes" or "no" response—responses which are required to claim an education credit.

28. In the past, the IRS accepted a blank field to mean "no" on the form; however, due to the IRS's recent changes to the Form 8863, forms submitted with blank fields resulted in further review of the tax returns, causing in delays to tax refunds.

29. According to the IRS, about 10 percent of the 6.6 million (*i.e.*, 600,000) tax returns using Form 8863 were affected by the error.

30. The error affected *all* returns involving Form 8863 that were filed by Defendants and their franchisees before February 22, 2013.

31. Based on the fact that other tax preparation providers such as Turbo Tax filled out the same form correctly, the overwhelming majority of the erroneous returns were filed by H&R Block.

32. On or about March 13, 2013, some H&R Block customers received a mass e-mail from Defendants stating that "the IRS has confirmed an issue related to certain education tax credits claimed on Form 8863, which has affected and delayed your tax return." The March 13 e-mail disclosed to H&R Block customers that they could expect their refunds to be delayed for another 4-6 weeks, stating: "It may take up to 4-6 weeks [for the IRS] to process your return."

33. On or about March 16, 2013, H&R Block CEO Bill Cobb issued the following public statement, which was reported by *Forbes*:

Let me set the record straight about the Form 8863 issue that has affected you, our valued clients: we made a mistake when the tax return was sent to the IRS. And you deserve an apology, an explanation, and to know what we're doing about it.

Here's what happened: this year's tax season started later than any in history (January 30th), followed by a further delay in form 8863 not being accepted until February 14. Not good for everyone. When the IRS began accepting the form, we immediately sent your returns, with the intention of getting you your refund as quickly as possible. In our zeal to move so quickly, we missed a step. Specifically there was a disconnect in the transmission of form 8863 from our delivery system to the IRS E-file system, and this caused the delay many of you are experiencing. We fixed the transmission issue right away, but couldn't undo it for those that had already been sent.

I want to make it clear that this was absolutely not the fault of your tax professional; your return was prepared accurately. This was an issue with the form transmission. This was our mistake — and I sincerely apologize. I want you to know that we hear the frustration of those impacted by this issue loud and clear, and we're working every avenue we can to get your refund to you as fast as possible.

We have been and remain in daily communication with the IRS, who are doing everything they can to speedily process all returns. We know that clients are beginning to see progress, funding dates are being communicated and refunds are definitely being funded. But we also recognize that in an already delayed season, it's still not as fast as we want, and we're not letting up until every client has his or her refund.

We are also committing to more frequent and regular updates with you as we have news to share, and we know we can do a better job here too.

Finally, I know an apology won't put your tax refund in your hands right away, and many of you still have questions. But right now, our singular focus is to get you that refund, and we have all hands on deck to help make this right.[5]

34.     Despite this admission, **Defendants did not offer compensation to Plaintiffs or any Class member**.

35.     Nothing Plaintiffs or any Class member did could have contributed to the error, which was the sole result of the conduct of H&R Block Inc., and its subsidiaries.

---

[5] http://www.forbes.com/sites/kellyphillipserb/2013/03/16/hr-block-ceo-offers-apology-for-education-credit-fiasco/ (last visited on April 3, 2013).

7

36. As a result of Defendants' actions, Plaintiffs and members of the Class suffered damages.

## V. FACTS CONCERNING THE PLAINTIFFS

37. Plaintiff Ursula Millett patronized the H&R Block office at 38 Carlyle Plaza Belleville, Illinois, and contracted with HRB Tax Group, Inc. and HRB Technology, LLC to prepare and file an accurate tax return for 2012.

38. Ms. Millett "opted out" of Defendants' Arbitration Agreement.

39. Ms. Millett paid Defendants $287.99, plus $34.95 in "Bank Fees," to prepare her 2012 tax return.

40. Ms. Millett's tax return was filed on February 4, 2013, but she did not receive her refund until March 27, 2013 – a delay of nearly two months.

41. Plaintiff Jeanine Sanlorenzo patronized the H&R Block office at 3400 Aramingo Avenue, Philadelphia, Pennsylvania, and contracted with HRB Tax Group, Inc. and HRB Technology, LLC to prepare and file an accurate tax return for 2012.

42. Ms. Sanlorenzo "opted out" of Defendants' Arbitration Agreement.

43. Ms. Sanlorenzo paid Defendants $222.24, plus $24.95 in "Bank Fees," to prepare her 2012 tax return.

44. Ms. Sanlorenzo's tax return was filed on or about January 29, 2013, but as of April 4, 2013, she still had not received her refund – a delay of more than two months.

45. Each of the Plaintiffs' tax returns required a Form 8863.

46. Each of the Plaintiffs were entitled to a prompt refund based on the filing of a Form 8863.

47. Each of the Plaintiffs' tax returns were filed and transmitted to the IRS prior to February 22, 2013.

48. As a result of the errors and omissions set forth above, each of the Plaintiffs' tax returns were improperly filed and transmitted.

49. Plaintiffs paid Defendants for improperly-performed tax preparation services.

50. Plaintiffs have been subjected to an unreasonable and unnecessary delay in receiving their tax refunds. Such delay was caused solely by Defendants' conduct, as alleged herein.

## VI. CLASS ALLEGATIONS

51. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of themselves and all others similarly situated, with the Class defined as follows:

> All individuals in the United States who have opted-out of H&R Block's Arbitration Clause, who had tax year 2012 returns prepared for them by H&R Block, Inc. or its subsidiaries and franchisees, which included Forms 8863, which were filed before February 22, 2013, and where H&R Block determined that the taxpayer was entitled to a refund.

52. Plaintiffs also bring this class action for the following Sub-Classes:

> <u>Illinois Sub-Class</u>: All individuals in the State of Illinois who have opted-out of H&R Block's Arbitration Clause, who had tax year 2012 returns prepared for them by H&R Block, Inc. or its subsidiaries and franchisees, which included Forms 8863, which were filed before February 22, 2013, and where H&R Block determined that the taxpayer was entitled to a refund.

> <u>Pennsylvania Sub-Class</u>: All individuals in the State of Pennsylvania who have opted-out of H&R Block's Arbitration Clause, who had tax year 2012 returns prepared for them by H&R Block, Inc. or its subsidiaries and franchisees, which included Forms 8863, which were filed before February 22, 2013, and where H&R Block determined that the taxpayer was entitled to a refund.

53. The Class members are so numerous that joinder is impracticable. On information and belief, there are approximately 600,000 members of the Class.

54. The Class and Sub-Classes are ascertainable and identifiable from Defendants' records.

55. There are questions of law and fact common to the Class members, which predominate over any questions that affect only individual Class members. The predominant common questions include:

    a) Whether Defendants' failure to correctly complete and/or transmit IRS Form 8863 constitutes a breach of contract;

    b) Whether Defendants' failure to correctly complete and/or transmit IRS Form 8863 constitutes negligence;

    c) Whether Defendants' advertising of a guarantee of accuracy, coupled with the systematic use of erroneous software to process tax returns, is an unfair or deceptive trade practice in violation of various state consumer protection statutes; and

    d) Whether Defendants' conduct caused Plaintiffs and Class members to sustain damages, and if so, what is the proper measure of those damages.

56. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

57. Plaintiffs will fairly and adequately represent the interests of the Class members and have no interests antagonistic to those of the Class and Sub-Classes. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions.

58. This class action is appropriate for certification because questions of law and fact common to the members of the Class and Sub-Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class and Sub-Classes is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on an individual case-by-case

basis, in which inconsistent results will magnify the delay and expense to all parties and the courts, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## VII.  CLAIMS FOR RELIEF

FIRST CAUSE OF ACTION
BREACH OF CONTRACT / BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
(Plaintiffs, Individually, and on Behalf of the Class)

59.  Plaintiffs repeat and re-allege all preceding allegations as if fully set forth herein.

60.  Plaintiffs bring this claim for breach of contract against all Defendants on their own behalf and on behalf of all members of the Class residing in the U.S. The relevant common law in each state of each Class member is materially uniform for purposes of this claim.

61.  Plaintiffs and the members of the Class entered into contracts with Defendants for the preparation of tax returns.

62.  Defendants breached their contracts for the preparation of tax returns by making the errors described herein.

63.  There is a duty of good faith and fair dealing implied in the Plaintiffs' and the Class members' contracts with Defendants. Given Defendants' actions described above, Defendants have breached their duty of good faith and fair dealing.

64.  Consideration existed here as Plaintiffs and Class members paid money to Defendants in exchange for Defendants' services under the tax preparation contracts.

65.  As a direct and proximate result of Defendants' breaches of the tax preparation contracts and breaches of the duty of good faith and fair dealing, Plaintiffs and the Class have suffered and will continue to suffer monetary damages including, but not limited to, amounts paid to Defendants for tax preparation services performed improperly and not in accordance with H&R Block's guarantees, delays in receiving the income tax refunds to which they are entitled

11

with consequent loss of the time value of money, amounts paid to third parties for additional professional tax preparation services in order to correct the errors in their tax returns prepared by Defendants, and consequential damages such as late fees and penalties charged by third parties, which Plaintiffs and the Class could have avoided had they timely received their tax refunds.

SECOND CAUSE OF ACTION
NEGLIGENCE
(Plaintiffs, Individually, and on Behalf of the Class)

66. Plaintiffs repeat and re-allege all preceding allegations as if fully set forth herein.

67. Plaintiffs bring this claim for negligence against all Defendants on their own behalf and on behalf of all Class members residing in the U.S. The relevant common law in each state of each Class member is materially uniform for purposes of this claim.

68. Defendants owed a duty to Plaintiffs and the Class to perform professional tax preparation services in accordance with the prevailing standard of care in the tax preparation and/or accounting industry.

69. Defendants breached this duty of care by failing to correctly prepare and/or transmit tax returns for Plaintiffs and the Class which included IRS Form 8663.

70. As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will continue to suffer substantial monetary damages including, but not limited to, amounts paid to Defendants for tax preparation services performed in a substandard and negligent manner, delays in receiving the income tax refunds to which they are entitled with consequent loss of the time value of money, amounts paid to third parties for additional professional tax preparation services in order to correct the errors in their tax returns prepared by Defendants, and consequential damages such as late fees and penalties charged by third parties, which Plaintiffs and the Class could have avoided had they timely received their tax refunds.

THIRD CAUSE OF ACTION
VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS
PRACTICES ACT, 815 ILCS § 505/1, *et seq.*
(Plaintiff Ursula Millett, Individually, and on Behalf of the Illinois Sub-Class)

71.     Plaintiff Ursula Millett repeats and re-alleges all preceding allegations as if fully set forth herein.

72.     Plaintiff Ursula Millett brings this claim against all Defendants for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1 *et seq.*, on her own behalf and on behalf of all Illinois Sub-Class members who obtained tax preparation services from Defendants.

73.     Plaintiff Millett and members of the Illinois Sub-Class are "person[s]" as defined under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1.

74.     The tax preparation services provided by Defendants, complained of herein, constitute "trade," and/or "commerce," as such terms are defined under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/1.

75.     Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act by advertising that all H&R Block products came with a guaranty of accuracy, while using defective software and other flawed tax preparation methods in order to complete, file and transmit Plaintiff's and Illinois Sub-Class members' tax returns.

76.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in connection with trade and commerce, as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared

unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS § 505/2.

77. Plaintiff and the Illinois Sub-Class members are entitled to relief under the Illinois Consumer Fraud and Deceptive Business Practices Act.

78. As a direct and proximate result of Defendants' violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and the Illinois Sub-Class members have suffered and will continue to suffer substantial monetary damages including, but not limited to, amounts paid to Defendants for tax preparation services performed, which were misrepresented to be "accurate," when, in fact, they were not, delays in receiving the income tax refunds to which they are entitled with consequent loss of the time value of money, amounts paid to third parties for additional professional tax preparation services in order to correct the errors in their tax returns prepared by Defendants, and consequential damages such as late fees and penalties charged by third parties, which Plaintiff and the Illinois Sub-Class members could have avoided had they timely received their tax refunds.

FOURTH CAUSE OF ACTION
VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201, *et seq.*
(Plaintiff Jeanine Sanlorenzo, Individually, and on Behalf of the Pennsylvania Sub-Class)

79. Plaintiff Jeanine Sanlorenzo repeats and re-alleges all preceding allegations as if fully set forth herein.

80. Plaintiff Jeanine Sanlorenzo brings this claim against all Defendants for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PA UTPCPL"), 73 P.S. § 201-1, *et seq.*, on her own behalf and on behalf of all Pennsylvania Sub-Class members who obtained tax preparation services from Defendants in the Commonwealth of Pennsylvania.

81. Plaintiff, the Pennsylvania Sub-Class members, and Defendants are "persons"

14

within the meaning of section 201-2(2) of the PA UTPCPL.

82. Section 201-2(4) of the PA UTPCPL proscribes, *inter alia*, engaging in any "unfair methods of competition" or "unfair or deceptive acts or practices" either at, prior to, or subsequent to a consumer transaction.

83. The actions of Defendants, set forth above, constitute unfair methods of competition and unfair and deceptive acts and practices under the PA UTPCPL.

84. Defendants violated the PA UTPCPL by advertising that all H&R Block products came with a guaranty of accuracy, while using defective software and other flawed tax preparation methods in order to complete, file and transmit Plaintiff's and the Pennsylvania Sub-Class members' tax returns.

85. Plaintiff and the Pennsylvania Sub-Class members justifiably relied on Defendants' unfair and deceptive representations concerning their guaranty of accuracy when they paid Defendants for the tax preparation services described herein.

86. Plaintiff and the Pennsylvania Sub-Class members did not know, nor could they have known, that as a result of Defendants' unfair and deceptive acts and practices, their tax refunds would be delayed.

87. As a direct and proximate result of Defendants' violations of the PA UTPCPL, Plaintiff and the Pennsylvania Sub-Class members have suffered and will continue to suffer substantial monetary damages including, but not limited to, amounts paid to Defendants for tax preparation services performed, which were misrepresented to be "accurate," when, in fact, they were not, delays in receiving the income tax refunds to which they are entitled with consequent loss of the time value of money, amounts paid to third parties for additional professional tax preparation services in order to correct the errors in their tax returns prepared by Defendants, and

consequential damages such as late fees and penalties charged by third parties, which Plaintiff and the Pennsylvania Sub-Class members could have avoided had they timely received their tax refunds.

**FIFTH CAUSE OF ACTION**
VIOLATION OF THE MISSOURI MERCHANDISE PRACTICES ACT,
R.S. Mo. § 407.010, *et seq.*
(Plaintiffs, Individually, and on Behalf of the Class)

88. Plaintiffs repeat and re-allege all preceding allegations as if fully set forth herein.

89. Plaintiffs bring this claim against HRB Technology LLC for violations of the Missouri Merchandise Practices Act, R.S. Mo. § 407.010, on their own behalf and on behalf of all Class members residing in the U.S.

90. Defendants provided Plaintiffs and Class members with "merchandise" as defined in the Missouri Merchandise Practices Act, R.S. Mo. §407.010, which defines "merchandise" to include "any objects, wares, goods, commodities, intangibles, real estate or services."

91. Defendants violated R.S. Mo. § 407.020, which provides that "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in [R.S.Mo. §407.453], in or from the state of Missouri, is declared to be an unlawful practice. . . ."

92. Defendants engaged in deception, false pretense, false promise, misrepresentation, unfair practice, and omission of material facts by supplying defective services while advertising that such services had guaranteed accuracy.

93. Plaintiffs are entitled to relief under R.S. Mo. §407.025.

94. As a direct and proximate result of Defendants' violations of the Missouri

16

Merchandise Practices Act, Plaintiffs and the Class have suffered and will continue to suffer substantial monetary damages including, but not limited to, amounts paid to Defendants for tax preparation services performed, which were misrepresented to be "accurate," when, in fact, they were not, delays in receiving the income tax refunds to which they are entitled with consequent loss of the time value of money, amounts paid to third parties for additional professional tax preparation services in order to correct the errors in their tax returns prepared by Defendants, and consequential damages such as late fees and penalties charged by third parties which Plaintiffs and the Class could have avoided had they timely received their tax refunds.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter an Order:

a. Certifying the proposed Class and Sub-Classes under Fed. R. Civ. P. 23 (a) and (b)(3), and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

b. Finding that Defendants are liable under all legal claims asserted herein;

c. Declaring that Defendants have breached their contracts for the preparation of tax returns;

d. Declaring that Defendants' conduct, as alleged herein, violates the Illinois Consumer Fraud and Deceptive Business Practices Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and the Missouri Merchandise Practices Act;

e. Awarding damages to Plaintiffs and Class members under the common law and statutory theories alleged herein, including compensatory damages, consequential damages, treble damages, punitive damages, and any other damages provided under relevant laws;

f. Awarding litigation costs and attorneys' fees;

g. Awarding pre- and post-judgment interest; and

h. Awarding any other legal or equitable relief as justice requires.

## IX. JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: April 10, 2013     By:     /s/ Edward A. Wallace
Kenneth A. Wexler
Edward A. Wallace
Amy E. Keller
WEXLER WALLACE LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com
eaw@wexlerwallace.com
aek@wexlerwallace.com

Sherrie R. Savett
Eric Lechtzin
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-3000
Fax: (215) 875-4636
ssavett@bm.net
elechtzin@bm.net

*Counsel for Plaintiffs and the Class*